IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KAYLA BRIMAGE<br>c/o Barrett Law Offices, PLLC<br>5 West Hargett Street, Suite 910<br>Raleigh, North Carolina 27601<br><br>*On behalf of herself and all others similarly situated*,<br><br>    *Plaintiff*,<br><br>    v.<br><br>AMERICAN ENTERTAINERS, LLC<br>d/b/a THE GENTLEMEN'S PLAYGROUND<br>213 Dominick Drive<br>Rocky Mount, North Carolina 27804<br><br>And<br><br>GURNAM KHERA<br>1261 Old Halifax Road<br>Roanoke Rapids, North Carolina 27870<br><br>    *Defendants*. | Case No.:<br><br>Collective and Class Action Complaint |

## CLASS AND COLLECTIVE ACTION COMPLAINT

COMES NOW, Kayla Brimage ("Named Plaintiff"), on behalf of herself and all others similarly situated, opt-in Plaintiffs and Rule 23 class members (collectively "Plaintiffs"), by and through undersigned counsel, hereby sets forth this collective/class action against Defendants American Entertainers, LLC d/b/a The Gentlemen's Playground ("the Club") and Gurnam Khera ("Khera") (together, "Defendants"), and alleges as follows:

### PRELIMINARY STATEMENT

1. This action is brought individually and as a collective action seeking unpaid minimum wages, unpaid overtime compensation, back-pay, restitution, liquidated damages,

reasonable attorney's fees and costs, and all related penalties and damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.

2. Defendants had a systemic company-wide policy, pattern, or practice of misclassifying exotic dancer employees as "independent contractors."

3. This action is also brought individually and as a class action for payment of all earned, accrued, and unpaid wages, and for other relief as appropriate, under the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.6 *et seq*.

4. Defendants' pay practices and policies were in direct violation of the FLSA and the NCWHA.

5. Plaintiffs seek unpaid straight and overtime compensation, in addition to liquidated damages, attorneys' fees and costs, prejudgment interest, and other damages permitted by applicable law.

6. As a result of this policy, pattern, or practice of misclassification, Defendants are legally responsible and now liable for failing to pay Plaintiffs under the Federal Fair Labor Standards Act ("FLSA") and the North Carolina Wage & Hour Act ("NCWHA").

7. Named Plaintiff brings this action as a class and collective action against Defendants seeking back-pay, restitution, liquidated damages, reasonable attorney's fees and costs, and all other relief that the Court deems just, reasonable and equitable in the circumstances.

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction pursuant to 29 U.S.C. § 1331, based upon the claims brought under the FLSA, 29 U.S.C. § 201, *et seq*.

9. The United States District Court for the Eastern District of North Carolina has personal jurisdiction because Defendant Khera is an adult domiciliary of Halifax County, North

Carolina and Defendants conducted business as the Gentlemen's Playground strip club in Edgecombe and/or Nash County, North Carolina, which is located within this District.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendant Khera is an adult domiciliary of Halifax County, North Carolina and Defendants conducted business in Edgecombe and/or Nash county North Carolina, within the Eastern District of North Carolina, and the substantial part of the events or omissions giving rise to these claims occurred in this District.

11. The claims for violations of the NCWHA are based upon the statutory law of the State of North Carolina.

12. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of operative fact as the FLSA claims.

13. All the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

## PARTIES

14. Named Plaintiff is an adult domiciliary of Edgecombe County, North Carolina.

15. By acting as the named plaintiff in this action, Named Plaintiff hereby affirms her consent, in the writing of this Complaint, to participate as a plaintiff in an FLSA collective action and to act as class representative in a class action under the NCWHA.

16. Named Plaintiff was employed by Defendants as an exotic dancer at Defendants' Gentlemen's Playground strip club located in Rocky Mount, North Carolina.

17. The FLSA collective action Opt-In and Putative Plaintiffs consist of individuals who did work or have worked for Defendants at the Gentlemen's Playground who were classified as independent contractors, and who were suffered or permitted to work by Defendants, at any

3

time within the three (3) year period prior to joining this lawsuit under 29 U.S.C. § 216(b).

18. The NCWHA Rule 23 proposed class action members consist of individuals who did work or have worked for Defendants at the Gentlemen's Playground who were classified as independent contractors, and who were suffered or permitted to work by Defendants, at any time within the two (2) year period prior to the filing of this lawsuit.

19. The Club is a limited liability company formed in North Carolina and operates as a strip club featuring female exotic dancers.

20. For the entire period relevant to this action, the Gentlemen's Playground has operated as a strip club at the location 213 Dominick Drive, Rocky Mount, North Carolina 27804.

21. Khera is an adult resident of Roanoke Rapids, North Carolina.

22. At all times relevant to this action, Khera is and was the primary owner and managing member of the Club. In this capacity, Khera, individually, supervised, managed, and dictated the day-to-day operation of the Gentlemen's Playground strip club, had authority to hire, fire, and administer employment related discipline on employees of the club, including the exotic dancers, had the authority to set and alter work schedules and work hours of employees of the club, including the exotic dancers, and was individually in charge of keeping and maintaining all employment records for all employees of the club, including the exotic dancers.

## **COVERAGE**

23. At all times material to this action, Defendants have acted, directly or indirectly, in the interest of an employer or joint employer with respect to Plaintiffs.

24. At all times material to this action, Defendants were employers within the defined scope of the FLSA, 29 U.S.C. § 203(d).

25. At all times material to this action, Plaintiffs were individual employees engaged

4

in commerce or the production of goods within the scope of the FLSA, 29 U.S.C. §§ 206 and 207.

26. At all times material to this action, Defendants were an enterprise engaged in commerce or the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(s), 203(r), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

## FACTUAL ALLEGATIONS

27. At all relevant times, Defendants operated a strip club called the Gentlemen's Playground featuring female exotic dancers.

28. At all times it was the job duty of Plaintiffs to perform as a female exotic dancer for the customers at Defendants' Gentlemen's Playground strip club.

29. Plaintiffs were employed by Defendants as exotic dancers at Defendants' Gentlemen's Playground strip club in Rocky Mount, North Carolina.

30. During the period of Plaintiffs' employment, the number of shifts Plaintiffs worked varied from week to week.

31. During the period of Plaintiffs' employment, the exact number of hours Plaintiffs worked varied from week to week.

32. Named Plaintiff was employed by Defendants as an exotic dancer at Defendants' Gentlemen's Playground strip club for the period of about April 2018 through about July 2019.

33. During the period of Named Plaintiff's employment, the exact number of hours Named Plaintiff worked varied from week to week.

34. During the period of Named Plaintiff's employment, Named Plaintiff customarily worked about 3-5 shifts per week for a total of about 21-35 hours per week.

5

35. On average, Named Plaintiff worked about 4 shifts per week and a total of about 28 hours per week.

36. Defendants have possession, custody, and control of time and/or sign in records and "house fee" payment records for Plaintiffs.

37. Agents on behalf of Defendants had actual knowledge of all hours Plaintiffs worked each shift through sign in or tip-in sheets, DJ records, and shift-managers monitoring and supervising Plaintiffs' work duties.

38. At no time during Plaintiffs' period of employment did Defendants ever pay Plaintiffs any wages for hours that Plaintiffs worked each week.

39. Defendants totally failed to pay wages or any kind of compensation to Plaintiffs for work duties performed.

**ENGAGEMENT IN COMMERCE AND THE PRODUCTION OF GOODS**

40. During the period of Plaintiffs' employment, Defendants served and purchased beer and liquor which was brewed/distilled outside of North Carolina, along with soda, which was also manufactured outside of North Carolina.

41. During the period of Plaintiffs' employment, Defendants served and purchased food which was manufactured, grown, processed, raised, and/or packaged outside of North Carolina.

42. During the period of Plaintiffs' employment, Defendants sold and purchased merchandise, such as t-shirts, that were manufactured outside of North Carolina.

43. During the period of Plaintiffs' employment, Defendants purchased and utilized equipment and goods used to operate the business such as kitchen equipment, kitchenware, cutlery, tableware, and paper goods that were manufactured outside of North Carolina.

44. During the period of Plaintiffs' employment, Defendants' employees sold goods and services through the processing of clients' credit cards thereby relying on contractual assurances from processors or third parties outside of North Carolina.

45. During the period of Plaintiffs' employment, Defendants advertised to clientele outside of North Carolina on the internet including the use of a Facebook page.

46. During the period of Plaintiffs' employment, Defendants streamed music from the internet stored outside of North Carolina from providers and services based outside of North Carolina and which was created by artists outside of North Carolina.

47. During the period of Plaintiffs' employment, Defendants played televised sporting events including "pay per view" sports that occurred outside of North Carolina.

48. During the period of Plaintiffs' employment, defendants had clients from outside of North Carolina and catered to this audience in part by being located very close to a major east coast interstates I-95 and United States Highway 64.

49. During the period of Plaintiffs' employment, Plaintiffs' work was so vitally related to the functioning of the Defendants' business operation, which itself is a facility of interstate commerce as described herein, that they were personally engaged in interstate commerce.

50. During the period of Plaintiffs' employment, Plaintiffs regularly performed to music stored outside of North Carolina that was being streamed through the internet from providers and services based outside of North Carolina and created by artists outside of North Carolina.

51. During the period of Plaintiffs' employment, Plaintiffs would at times operate, play, and select the music that was stored outside of North Carolina that was being streamed

through the internet from providers and services based outside North Carolina and which was created by artists outside North Carolina.

52. During the period of Plaintiffs' employment, Plaintiffs would sell and/or deliver merchandise, created outside of North Carolina, to the customers such as t-shirts independently or as part of a package of goods and services.

53. During the period of Plaintiffs' employment, Plaintiffs would purchase stage attire, makeup, and shoes for their performances, which had traveled through interstate commerce and which were manufactured outside of North Carolina.

54. Defendants operated and continue to operate a cash heavy business based on the sale of services and good.

55. Upon information and belief, Defendants, during the period of Plaintiffs' employment, had an annual gross volume of sales not wholly reflected in Defendants' tax returns, as sales for services were not always properly accounted for, Defendants received unrecorded cash payments from employees in the form of house fees or other required payments, and Defendants improperly routed payments for goods or services directly to employees or from employee to employee without properly accounting for the entire dollar value of the sale.

56. Upon information and belief, Defendants, during the period of Plaintiffs' employment, did not adequately record the total number of private or semi-private dances performed by Plaintiffs.

## **MISCLASSIFICATION AS INDEPENDENT CONTRACTORS**

57. Defendants misclassified Plaintiffs as independent contractors when Plaintiffs should have been classified under the FLSA and NCWHA as an employee.

58. Defendants controlled all aspects of the job duties Plaintiffs performed inside the

club through employment rules and workplace policies.

59. Defendants controlled the method by which Plaintiffs could earn money at the club by establishing dance orders, setting customer prices on private and semi-private exotic dances, and setting private and semi-private dance specials and promotions for customers.

60. Defendants required Plaintiffs to perform private and semi-private dances under the pricing guidelines, policies, procedures, and promotions set exclusively by Defendants.

61. Defendants hired Plaintiffs and had the ability to discipline, fine, fire, and adjust Plaintiffs' work schedules.

62. Defendants, through supervisors and managers, supervised the duties of Plaintiffs to make sure Plaintiffs' job performance was of sufficient quality.

63. Defendants conducted initial interviews and vetting procedures for Plaintiffs, and, at Defendants' sole discretion, Defendants' management and/or ownership could deny Plaintiffs access or ability to dance and/or work at the club.

64. Defendants had the right to suspend or send Plaintiffs home and away from the club if Plaintiffs or any other violated rules or policies or if the club's ownership or management, at its discretion, did not want Plaintiffs to work at the club.

65. Plaintiffs were not required to have or possess any requisite certification, education, or specialized training as a condition of employment with Defendants.

66. In addition to failing to pay Plaintiffs wages for hours worked, Defendants required Plaintiffs to pay the club or its ownership or management a house fee or kickback in the amount of about $40.00 or more for each shift Plaintiffs worked.

67. Without justification, Defendants regularly and customarily kept and/or assigned to management tips and gratuities Plaintiffs received from customers.

9

Case 4:20-cv-00169-BO   Document 1   Filed 09/02/20   Page 9 of 19

68. Defendants and club ownership and management had actual knowledge that for at least the past twenty (20) years that Plaintiffs at Defendants' Gentlemen's Playground were employees and not independent contractors and were owed minimum wage compensation under the FLSA and NCWHA.

69. Upon information and belief, Defendants, including management and ownership, had actual or constructive knowledge the club misclassified Plaintiffs as independent contractors, failed to pay them wages as required under the FLSA and NCWHA, unlawfully withheld or assigned tips Plaintiffs received from customers, and unlawfully charged Plaintiffs kickbacks, fines, and surcharges during their employment period.

70. Defendants have willfully violated the statutory rights of Plaintiffs under both the FLSA and the NCWHA, resulting in damages to Plaintiffs in the form of unpaid straight-time wages and unpaid overtime wages, in addition to liquidated damages, attorneys' fees and costs, prejudgment interest, and other damages permitted by applicable law.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

71. Named Plaintiff brings Count One of the instant Complaint as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of herself and all similarly situated employees.

72. Similarly situated employees, for purposes of the FLSA collective action claims, include individuals who have worked for Defendants at any time within the three (3) year period prior to joining this lawsuit under 29 U.S.C. § 216(b), who signed an agreement to provide exotic dancing services to Defendants, and performed such services, pursuant to that agreement, as independent contractors, and who have not been paid minimum wage and overtime compensation.

73. Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Plaintiffs.

74. Named Plaintiff requests that she be permitted to serve as representative of those

who consent to participate in this action, and that this action be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

## NCWHA CLASS ACTION ALLEGATIONS

75. Named Plaintiff brings Count Two of the instant Complaint as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and all similarly situated employees, for relief to redress and remedy Defendants' violations of the NCWHA, N.C. Gen. Stat. § 95-25.1, et seq.

76. Pursuit of this action as a class will provide the most efficient mechanism for adjudicating the claims of Plaintiffs.

77. The Proposed Class: All individuals who signed an agreement to provide exotic dancing services to Defendants, and performed such services, pursuant to that agreement, as independent contractors in North Carolina, who were not paid their earned, accrued, and promised wages, and unlawful deductions, including, but not limited to, any straight and overtime wages consistent with N.C. Gen. Stat. 95-25.6 (requiring that all earned and accrued wages be paid on an employee's regular pay date) and N.C. Gen. Stat. 95-25.13 (requiring the notification of wages and pay date in writing or through postings, such as those relating to federal and state law during the two (2) years preceding the filing of this action.

78. Numerosity: The proposed class is so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the exact number of class members is unknown to Named Plaintiff at this time, upon information and belief, the class comprises at least fifty (50) individuals.

79. Common Questions Predominate: There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class, and these common

questions of law and fact predominate over any questions affecting members of the proposed class individually, in that all Plaintiffs have been harmed by Defendants' misclassification of employees as independent contractors. The common questions of law and fact include, but are not limited to, the following:

    a. Whether all exotic dancers are "employees" for purposes of the North Carolina wage laws;

    b. Whether Defendants failed to pay Plaintiffs all of their earned and accrued wages, including, but not limited to, any promised straight or overtime wages, on their regular pay date, pursuant to N.C. Gen. Stat. §§ 95.25.6, for failure to comply with the promised payment of through mandatory notifications of the FLSA and NCWHA posters as required by 95-25.13;

    c. Whether Defendants compensated Plaintiffs for all of their hours worked;

    d. Whether Defendants lawfully deducted from Plaintiffs' wages, in accordance with N.C. Gen. Stat. § 95-25.8 and 13 N.C. Admin. Code 12 § .0305(g).

80. <u>Typicality</u>: The claims of Named Plaintiff are typical of the claims of each proposed class member, and the relief sought is typical of the relief which would be sought by each member of the class in separate actions. All putative class members were subject to the same compensation practices of Defendants, as alleged herein, of failing to pay employees all of their earned and accrued wages pursuant to N.C. Gen. Stat. § 95-25.6. Defendants' compensation policies and practices affected all putative class members similarly. Named Plaintiff and members of the proposed class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

81. <u>Adequacy of Representation</u>: Named Plaintiff is able to fairly and adequately

protect the interests of all members of the proposed class, and there are no known conflicts of interest between Named Plaintiff and members of the proposed class. Named Plaintiff has retained counsel who is experienced and competent in both wage and hour law and complex class action litigation.

82. <u>Superiority</u>: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual class members may be small for some in the sense pertinent to the class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them.

83. Important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially greater than if the claims are not treated as a class action. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for Defendants, and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they are not parties. The issue in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

84. <u>Public Policy Considerations</u>: Defendants violated the NCWHA. Just as current employees are often afraid to assert their rights out of fear of direct or indirect retaliation, former employees may also be fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class action lawsuits provide class members who are not named in the Complaint a degree of anonymity, which allows for vindication of their rights while eliminating or reducing these risks

**COUNT ONE**
**Violation of the Fair Labor Standards Act**
**29 U.S.C. §§ 203(m), 206**
**(Unlawful Tip Deductions and Failure to Pay Minimum Wage)**
**(On Behalf of Named, Opt-In, and Putative Plaintiffs)**

85. Named Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

86. Pursuant to the FLSA, 29 U.S.C. § 206, employers must pay non-exempt employees a minimum wage of $7.25 per hour for all hours worked.

87. The FLSA, 29 U.S.C. § 203(m) and 29 C.F.R. § 531.59, provides an exception to the aforementioned minimum wage rate of $7.25 per hour, allowing certain employers to take a "tip credit," and count tips received by eligible employees toward the employer's minimum wage obligations, with a maximum credit claimed for each employee of $5.12 per hour.

88. In order to lawfully utilize the tip credit allowance, the FLSA, 29 U.S.C. § 203(m), requires in part that "all tips received by [each] employee [be] retained by the employee."

89. The FLSA prohibits a taking or assignment by Defendants or its management or non-customarily tipped employees of tips or gratuities received by tipped employees from customers.

90. As set forth above, Defendants failed to pay Named Plaintiff and other similarly situated individuals minimum wage compensation as required by the FLSA.

91. As set forth above, Defendants unlawfully kept and/or assigned tips and gratuities Plaintiffs and other similarly situated individuals received from customers.

92. Without the benefits of the tip credit provision, Defendants must pay Plaintiffs a free and clear hourly rate the statutory minimum wage of $7.25 per hour for all hours worked, without any credit for the tips received by Plaintiffs.

93. As set forth above, Defendants willfully failed to pay Plaintiffs the statutory minimum wage rate by misclassifying them as independent contractors.

94. The foregoing conduct, as alleged above, constitutes willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a), which permits the recovery of unpaid minimum wages for up to three (3) years, rather than two (2) years.

95. Similarly, for the reasons stated above, Defendants cannot affirmatively defend its failure to pay the appropriate minimum wage rate as having been done in good faith, entitling Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages under 29 U.S.C. § 216(b).

96. As such, Plaintiffs seek to recover from Defendants the following damages:

   a. Minimum wages due;

   b. Liquidated damages in an equal amount;

   c. Reasonable attorneys' fees and costs; and

   d. All other legal and equitable relief as the Court deems just and proper.

**COUNT TWO**
**Violation of the North Carolina Wage and Hour Act**
**N.C. Gen. Stat. §§ 95-25.6, 95-25.8, 95-25.13**
**(Invalid or Unauthorized Deductions from Tips and/or Promised Wages)**

**(On Behalf of Named, Opt-In, and Putative Plaintiffs)**

97. Named Plaintiff incorporates by reference all preceding paragraphs as if the same were repeated here verbatim.

98. At all relevant times, Defendants employed, and/or continue to employ Plaintiffs within the meaning of the NCWHA.

99. Defendants employed Plaintiffs within the State of North Carolina.

100. Pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.8, and the accompanying regulation, 13 N.C. Admin. Code 12 § .0305(g), "If an employer withholds or diverts wages for purposes not permitted by law, the employer shall be in violation of G.S. 95-25.6 . . . even if the employee authorizes the withholding in writing pursuant to G.S. 95-25.8(a), because that authorization is invalid."

101. The NCWHA further prohibits a taking or assignment by Defendants or their management or non-customarily tipped employees of tips or gratuities received by tipped employees from customers.

102. Regardless of whether Defendants may have received authorization otherwise in compliance with N.C. Gen. Stat. § 95-25.8(a), Defendants withheld Plaintiffs' wages "for purposes not permitted by law," as provided above, and are therefore liable for these unlawful withholdings.

103. Defendants unlawfully withheld and diverted funds from the compensation earned by Plaintiffs for an improper purpose, to offset Defendants' business expenses, including, but not limited to, the cost of employing other workers, in direct violation of the NCWHA.

104. Additionally, pursuant to the NCWHA, N.C. Gen. Stat. § 95-25.8(a)(3), an employer may only withhold or divert any portion of an employee's wages, "when the amount

of the proposed deduction is not known and agreed upon in advance," after meeting several requirements, including, but not limited to: (1) receiving written authorization from each employee; (2) providing the reason for each deduction; (3) providing advance written notice of the actual amount to be deducted; and (4) providing written notice to employees of their right to withdraw authorization.

105. Beyond withholding Plaintiffs' wages "for purposes not permitted by law," Defendants violated N.C. Gen. Stat. § 95-25.8(a)(3) by not receiving sufficient authorization from Plaintiffs, including, but not limited to, failing to provide advance written notice of the actual amount to be deducted, or failure to provide written notice of employees' right to withdraw authorization.

106. As a result of Defendants' unlawful policies and practices, Plaintiffs have been deprived of compensation due and owing.

107. Consistent with the above, Defendants failed to pay Plaintiffs all owed promised and earned wages, in violation of N.C. Gen. Stat. § 95-25.6.

108. For the reasons stated above, Defendants cannot affirmatively defend its NCWHA violations as having been done in good faith, entitling Plaintiffs to liquidated damages in an amount equal to the amount of unlawful deductions, straight and promised wages consistent with § 95-25.6 and § 95-25.13, notification of payment of wages as required by federal and state law postings. All such damages are recoverable under N.C. Gen. Stat. § 95-25.22(a1).

109. As such, Plaintiffs seek to recover from Defendants the following damages:

    a. Misappropriated and/or unlawfully deducted wages;

    b. Unpaid promised wages through posting requirements;

    c. Liquidated damages in an equal amount;

17

Case 4:20-cv-00169-BO    Document 1    Filed 09/02/20    Page 17 of 19

    d. Reasonable attorneys' fees and costs;

    e. Prejudgment interest; and

    f. All other legal and equitable relief as the Court deems just and proper.

## **RELIEF SOUGHT**

WHEREFORE, Named Plaintiff, and all those similarly situated, collectively pray that this Honorable Court:

1. Issue an Order certifying this action as a collective action under the FLSA, and designate Named Plaintiff as a representative of all those similarly situated under the FLSA collective action;

2. Issue an Order certifying this action as a class action under the NCWHA, and designate Named Plaintiff as a representative on behalf of all those similarly situated under the NCWHA class;

3. Award Named Plaintiff and all those similarly situated actual damages for all unpaid and misappropriated wages found due to Named Plaintiff and those similarly situated, and liquidated damages equal in amount, as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(a1), and pursuant to the FLSA, 29 U.S.C. § 216(b);

4. Award Named Plaintiff and all those similarly situated pre- and post-judgment interest at the statutory rate, as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(a), and pursuant to the FLSA, 29 U.S.C. § 216(b);

5. Award Named Plaintiff and all those similarly situated attorneys' fees, costs, and disbursements as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(d), and pursuant to the FLSA, 29 U.S.C. § 216(b); and

6. Award Named Plaintiff and all those similarly situated further legal equitable relief as

18

Case 4:20-cv-00169-BO    Document 1    Filed 09/02/20    Page 18 of 19

this Court deems necessary, just and proper.

Respectfully submitted this, September 2, 2020.

/s/ *Joshua M. Krasner*_____
Joshua M. Krasner, Esq.
NC Bar No. 19132
Barrett Law Offices, PLLC
5 West Hargett Street, Suite 910
Raleigh, North Carolina 27601
(919) 999-2799 (ph)
Email: jkrasner@barrettlawoffices.com

*/s/ Gregg C. Greenberg*_____
Gregg C. Greenberg, Virginia Bar No. 79610
(To be Admitted by Pro Hac Vice)
ZIPIN, AMSTER & GREENBERG, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
(301) 587-9373 (ph)
Email: GGreenberg@ZAGFirm.com

*Attorneys for Named Plaintiff*
*and the Class / Collective*